

1333A North Ave., Ste. 762
New Rochelle, NY 10804
(516) 233-1660
www.LiebowitzLawFirm.com

October 21, 2021

**VIA ECF**

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza E.
Brooklyn, New York 11201

Re:   <u>Liebowitz Law Firm, PLLC v. Glen Craig,</u> 1:21-cv-04914 (FB)

Dear Judge Block:

We represent Liebowitz Law Firm, PLLC ("LLF") in the above-referenced case and write in opposition to defendant Glen Craig ("Defendant" or "Craig")'s motion requesting a pre-motion conference to dismiss LLF's declaratory judgment action under Rule 12(b)(2) and (6) of the Federal Rules of Civil Procedure. [Dkt. No. 11]  For the following reasons, Defendant's request should be denied and his proposed Rule 12 motion should be strongly discouraged by the Court.

As a preliminary matter, the letter motion at Dkt. No. 11 should be stricken from the record because the attorney who filed and signed the motion, Joel B. Rothman, has failed to file a notice of appearance on behalf of Craig in violation of EDNY Local Civil Rule 5.2(a) and EDNY's NextGen CM/ECF User's Guide, dated April 2021.  Moreover, on the face of the letter motion, Rothman fails to even identify himself or his law firm as Defendant's authorized counsel.

**RELEVANT BACKGROUND**

LLF is a New York-based copyright enforcement law firm which, from 2016 through 2020, represented Defendant in about a dozen copyright infringement actions filed in federal court.  With respect to two of those actions, *Craig v. UMG Recordings, Inc.* (the "UMG Action") and *Craig v. PopMatters* (the "PopMatters Action"), Craig sued LLF for legal malpractice in New York (the "State Court Action") after enlisting the assistance of two intellectual property law firms, SRIPLaw and Donniger / Burroughs, both of which are LLF's direct competitors in the field of copyright enforcement.

In the *UMG Action,* Craig agreed in writing to settle his claims against UMG involving three photographs of musician B.B. King.  After receiving a significant sum of money from the UMG settlement, Craig had "buyer's remorse" and turned around and sued LLF, claiming that he would have received upwards of $450,000 at trial if he had not agreed to the UMG settlement.  But Craig's verified responses to LLF's interrogatories show that Craig lacks any evidence to support this predatory demand. He has testified under oath that he never licensed any one of the B.B.





King Photographs for more than $1,250.00. Moreover, UMG's expert opined that the fair market value of UMG's alleged unauthorized uses did not exceed the amount of $9,452.21.

As is pertinent here, Craig's claims against LLF relating to the UMG Action hinge on the validity of a copyright registration certificate, bearing No. VAu 1-159-683 (the "683 Registration"), which is plainly invalid respecting the B.B King Photographs. The record shows that Craig registered the B.B. King Photographs as "unpublished" when his testimony under oath indicates that he knew they were first published over fifty years ago. The Honorable J. Paul Oetken (U.S.D.J.) also found that the B.B. Photographs were published in the year 1971. Accordingly, LLF respectfully requests that the Court invalidate Craig's registration of the B.B. King Photographs under 411(b)(1)(A) of the Copyright Act, 17 U.S.C. §411(b)(1)(A).

In the *PopMatters Action*, Craig authorized LLF to file suit on his behalf involving PopMatters' use of Craig's photograph of musician Miles Davis. After LLF filed suit in a second venue, LLF learned for the very first time from PopMatters' counsel that Craig had entered into a license agreement which granted PopMatters a license to use the Photograph. LLF promptly withdrew the lawsuit and the court entered an attorneys' fee award against Craig on grounds that the claim was objectively unreasonable given the existence of the license. Even though Craig could not have prevailed in the *PopMatters Action*, and deliberately concealed the existence of the license from LLF, he now seeks about $25,000 in damages against LLF in the State Court Action.

Significantly, Craig testified under oath that he published the Miles Davis Photograph as early as March 25, 2014; yet he registered the image as "unpublished" in November 2014 as part of registration No. VAu 1-192-067 (the "067 Registration"). Accordingly, LLF requests that the Court invalidate Craig's registration of the Miles Davis Photograph under section 411(b)(1)(A).

**Point I:   A Justiciable Controversy Exists Regarding the Validity of Craig's Registrations**

Defendant first argues that LLF's Declaratory Judgment action is not ripe for review because no actual controversy exists. To determine whether a case presents an actual controversy under the Declaratory Judgment Act, a court must ascertain "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal Interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Here, Craig concedes that the controversy concerning Craig's defective registrations is substantial and that the parties have adverse legal interests. Notwithstanding, Craig argues that the instant controversy is "hypothetical" and lacks "immediacy". But there is nothing hypothetical or abstract about Craig's state court action against LLF. The case has already been filed and discovery is under way. *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F.Supp.1155 (W.D.N.Y. 1987) ("The existence of Alcide's Connecticut lawsuit is, obviously, the strongest possible evidence that a controversy exists as to Bausch & Lomb's use of the name ReNu on its disinfectant solutions."); *see also I.O.B Realty, Inc. v. Patsy's Brand, Inc.,* 2020 WL 2086096 (S.D.N.Y. April 30, 2020) ("an opposition proceeding combined with an explicit threat of suit . . . has been found to be sufficient to establish an actual controversy between the parties").



Defendant also argues that the issue of copyright invalidity lacks "immediacy" because LLF's liability for malpractice should be determined in state court prior to the federal question of copyright invalidity. This argument is baseless. In order for Craig to prevail in the State Court Action, he must show that he would have succeeded in the underlying UMG Action and PopMatters Action, which means that he must prove that he owns valid registrations for the photographs at issue. *See Aquino v. Kuczinski, Vila & Assoc., P.C.*, 39 A.D.3d 216, 218-219, 835 N.Y.S.2d 16 (1st Dep't 2007) ("In order to establish a prima facie case of legal malpractice, a plaintiff must demonstrate that he or she would have succeeded on the merits of the underlying action but for the attorney's negligence"). The possession of a valid copyright registration, with respect to the copyrighted work in question, "is a precondition to filing a claim" for copyright infringement. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). Thus, the State Court Action need not proceed to final judgment before a federal court can declare the rights of adverse parties. *See Maryland Ca. Co.,* 312 U.S. at 271 (finding that a justiciable controversy existed where an underlying litigation remained pending between the adverse parties).[1]

**Point II:  LLF Has Article III Standing to Seek a Declaratory Judgment**

Next, Defendant argues that LLF lacks Article III standing to sue because LLF is not the copyright holder or accused infringer. But LLF need not be a copyright claimant or accused infringer to suffer a concrete injury as a result of the defective registrations. At present, Craig is using his defective registrations as a "sword" and a "spear" to extract hundreds of thousands of dollars from LLF (despite no evidence to support such exorbitant claims). He is also forcing LLF to incur out-of-pocket attorneys' fees to defend the State Court Action and to divert its scarce legal resources to contest Craig's malicious prosecution. Therefore, (1) LLF has suffered an injury-in-fact as evidenced by its out-of-pocket monetary losses, (2) such injury has been sustained as a result of Craig's coercive action of suing LLF on the basis of materially defective registrations that are subject to challenge in this action; and (3) the requested Court order to invalidate Craig's registrations of the photographs will effectively neutralize the State Court Action with respect to Craig's malpractice claims against LLF. A favorable ruling here will also qualify LLF for a recovery of its attorneys' fees and out-of-pocket losses in the State Court Action.

**Point III:  The Court Has Subject Matter Jurisdiction to Invalidate Craig's Registrations**

Finally, Craig argues that the Court lacks subject matter jurisdiction to invalidate his copyright registrations on grounds that no actual controversy exists. But Defendant is not merely claiming a copyright interest in the photographs. Rather, he is using the defective registrations as the engine of his coercive action to inflict maximum financial injury on LLF. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 19 (1983) (noting that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question" (footnote omitted)). The case cited by Defendant, *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 405 (S.D.N.Y. 2012) is inapposite because it did <u>not</u> involve any coercive action taken by the copyright holder.

---

[1] In state court, LLF seeks damages against Craig on grounds that LLF was defrauded by Craig's false representations *to LLF*. Such counterclaim does not ask the state court to invalidate the registrations, as here, or otherwise find that Craig committed fraud on the copyright office.



Respectfully submitted,

**s/jameshfreeman/**
James H. Freeman

*Counsel for Plaintiff*
*Liebowitz Law Firm, PLLC*